**KOLLER LAW LLC**
David M. Koller, Esq. (PA 90119)
Jordan D. Santo, Esq. (PA 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WAYNE PATTERSON,** | : | **Civil Action No. 26-8184** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **SFM LLC,** | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Wayne Patterson (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against SFM LLC (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act of 1990, as amended ("ADA"), the Philadelphia Fair Practices Ordinance ("PFPO"), Section 1981 of the Civil Rights Act ("Section 1981"), and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Philadelphia, PA.
3. Upon information and belief, Defendant SFM LLC does business as Sprouts Farmers Market, is a chain of grocery stores with a location at 2370 Oregon Avenue, Philadelphia,

PA 19145 and with a corporate headquarters at 5455 E High Street, Suite 111, Phoenix, AZ 85054.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweek in the current or preceding year.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendants because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law and local ordinance claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted his administrative remedies under Title VII, the ADA, and the PFPO.

15. On or about April 2, 2026, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), which he digitally signed the same day, alleging race, religion and disability discrimination as well as retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2026-05290 and was dual filed with the Pennsylvania Human Relations Commission and/or the Philadelphia Commission on Human Relations and assigned Case Number 2026-01-20-22524.

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated July 28, 2026.

18. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PFPO claims.

20. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. Plaintiff is an African American male and he is Muslim.

23. On May 31, 2024, Defendant hired Plaintiff in the position of Senior Meat/Seafood Clerk.

24. Plaintiff was well qualified for his position and performed well.

## PLAINTIFF IS DISABLED

25. Plaintiff has the serious health condition of Sciatica which is considered to be a disability under the ADA and the PFPO.

26. The major life activities affected by Sciatica include, but are not limited to, sitting, standing, performing manual tasks and working.

## PLAINTIFF NOTIFIED DEFENDANT OF HIS DISABILITY AND REQUESTED REASONABLE ACCOMMODATIONS

27. On September 25, 2024, Plaintiff notified Defendant of his disability by providing a doctor's note to Fritz Last Name Unknown ("LNU") (hereinafter "Fritz") (Caucasian), Store Manager.

28. Plaintiff's doctor's note included a request that Defendant place Plaintiff on light duty for two (2) to three (3) weeks due to his disability and stated his medical need for periodic absences.

29. However, rather than accommodating Plaintiff's medical restrictions, Fritz merely stated he would update Plaintiff's personnel file and claimed that he was attempting to move him to a different department due to an alleged lack of light duty work available for him in his current position.

30. This demonstrated Defendant's unwillingness to provide Plaintiff with a reasonable accommodation.

31. Thereafter, Plaintiff's physician provided Defendant with updated medical documentation every six (6) months to verify Plaintiff's ongoing disability and need for accommodations.

**A NEW STORE MANAGER CAME TO DEFENDANT**

32. On November 29, 2024, Nick Farley (Caucasian) became the new Store Manager, replacing Fritz.

**FARLEY SYSTEMATICALLY DISCRIMINATED AGAINST BLACK EMPLOYEES, INCLUDING PLAINTIFF**

33. The entire store, consisting of approximately 60 employees, reported to Farley, including an estimated 15 to 20 Black employees.

34. Upon assuming his position as Store Manager, Farley systematically targeted Black employees for termination, firing between 10 and 12 Black employees while termination zero Caucasian employees, demonstrating a clear and unmistakable pattern of racial discrimination.

35. As further discrimination, Farley enforced workplace rules and policies in a discriminatory manner based on race, treating Caucasian employees far more favorably than Black employees for identical or worse conduct.

36. Specifically, when Caucasian employees arrived late to work, they were not subjected to disciplinary write-ups, while Black employees, including Plaintiff, were disciplined for attendance issues.

37. As further evidence that Defendant applied its policies in a blatantly discriminatory manner, Evan Ross (Caucasian), Meat/Seafood Clerk, frequently reported to work intoxicated but was never disciplined or terminated for this serious misconduct that created safety risks for customers and employees alike.

**PLAINTIFF REPORTED A CAUCASIAN DEPARTMENT MANAGER VIOLATING DEFENDANT'S POLICIES, BUT FARLEY REFUSED TO DISCIPLINE HIM**

38. Terry LNU (Caucasian) (hereinafter "Terry"), Department Manager who reported to Farley, repeatedly violated Defendant's policies by improperly disposing of items in the regular trash that were supposed to be placed in the trash bin located outside the store.

39. When Plaintiff reported Terry's policy violations to Farley, Farley protected Terry by repeatedly denying that Terry was responsible, despite Plaintiff's direct observation of her misconduct.

40. Upon information and belief, had a Black employee committed the same policy violations as Terry, that employee would have been disciplined or terminated, demonstrating the racial double standard enforced by Farley.

**FARLEY ISSUED PLAINTIFF UNWARRANTED DISCIPLINES**

41. As further discrimination, Farley issued Plaintiff two (2) disciplinary warnings in November and December 2024, which Plaintiff was never notified about at the time they

were allegedly issued, depriving him of any opportunity to respond to or contest the alleged performance issues.

42. In addition, Farley repeatedly disciplined Plaintiff for calling out of work due to his disability, despite Plaintiff consistently informing Defendant that his absences were caused by his disability as substantiated by his previously submitted physician's note.

**PLAINTIFF COMPLAINED TO FARLEY DIRECTLY ABOUT HIS RACIALLY DISCRIMINATORY CONDUCT**

43. In December 2024, Plaintiff directly confronted Farley and asked him if he was racist, explaining that he had witnessed Farley blaming Black employees for mistakes and policy violations that were actually committed by Caucasian managers.

44. Plaintiff explicitly told Farley that he observed him discriminating against Black employees.

45. Farley denied being racist and asked Plaintiff why he would make such an accusation, but Farley's subsequent conduct demonstrated that Plaintiff's concerns were entirely justified.

**FARLEY'S TREATMENT OF PLAINTIFF INTENSIFIED**

46. Following Plaintiff's December 2024 complaint about racial discrimination, Farley intensified his discriminatory treatment of Plaintiff in retaliation for his protected opposition to unlawful employment practices.

**FARLEY DISCIPLINED PLAINTIFF FOR CALLING OUT OF WORK TO ATTEND A RELIGIOUS CEREMONY IN WHICH HE HAD GIVEN PRIOR NOTICE TO**

47. On March 30, 2025, Plaintiff was required to miss work to attend a religious ceremony on the last day of Ramadan, which Farley was aware of in advance.

48. Despite having notice of Plaintiff's religious observance, Farley issued Plaintiff a disciplinary write-up for the absence, demonstrating religious discrimination in addition to race and disability discrimination.

49. Caucasian and non-Muslim employees were permitted to call out from work without receiving any written discipline for their absences, while Plaintiff, a Black Muslim employee, was punished for observing his religious obligations.

**FARLEY ATTEMPTED TO CHANGE PLAINTIFF'S WORK SCHEDULE IN ORDER TO HARASS HIM**

50. Also in March 2025, Farley attempted to change Plaintiff's work schedule in the middle of this week, as a way of intentionally harassing him.

51. At the end of April 2025, Farley instructed Randy Chapman (African American, Muslim), Meat/Seafood Manager, to rearrange the schedule, resulting in the two (2) Black employees being assigned to the closing shift despite this assignment being contrary to the availability Plaintiff had provided to Defendant.

52. This mid-week schedule manipulation and disregard for Plaintiff's stated availability did not occur with Caucasian employees and was part of Farley's pattern of subjecting Black employees to harsher and more arbitrary working conditions.

**PLAINTIFF REQUESTED REASONABLE ACCOMOMDATIONS DUE TO HIS DISABILITY**

53. On May 22, 2025, Plaintiff submitted another doctor's note to Farley regarding his disability and medical need for accommodation, which Farley acknowledged.

54. Despite having approved medical documentation on file confirming Plaintiff's disability and need for periodic absences, Farley continued to issue disciplinary warnings to

Plaintiff for disability-related absences, demonstrating blatant discrimination based on Plaintiff's disability.

**PLAINTIFF REQUESTED INTERMITTENT FAMILY AND MEDICAL LEAVE ACT ("FMLA") LEAVE DUE TO HIS DISABILITY**

55. On May 31, 2025, Plaintiff submitted a request for Intermittent Family and Medical Leave Act ("FMLA") leave due to his disability.

**PLAINTIFF HAD TO CALL OUT OF WORK DUE TO HIS DISABILITY**

56. On June 1, 2025, just one day after submitting his request for Intermittent FMLA leave, Plaintiff experienced back spasms caused by his disability and called out from work, informing Defendant of the disability-related reason for his absence.

57. Rather than recognizing this absence as protected under the pending Intermittent FMLA request and the ADA, Farley issued Plaintiff yet another written disciplinary warning for this disability-related absence, demonstrating Defendant's complete failure to engage in the interactive process and allow a reasonable accommodation for Plaintiff's disability.

**DEFENDANT TERMINATED PLAINTIFF**

58. On June 7, 2025, just six (6) days after Plaintiff exercised his right to request FMLA leave, Defendant terminated Plaintiff's employment, citing absences as the reason for his termination.

59. Farley falsely claimed during the termination meeting that Plaintiff had not requested FMLA leave, despite the fact that Plaintiff had submitted his request for Intermittent FMLA leave on May 31, 2025.

60. When Plaintiff attempted to show proof that he had filed for Intermittent FMLA leave on May 31, 2025, and told Farley the exact date he had submitted the request, Farley refused to review the evidence or listen to Plaintiff's explanation.

61. Farley ordered Plaintiff to leave the store immediately, denying him any meaningful opportunity to defend himself against the false accusations or present evidence of his Intermittent FMLA leave request.

62. The timing of Plaintiff's termination, occurring merely six (6) days after he exercised his right to request Intermittent FMLA leave as an accommodation for his disability, demonstrates that his termination was in direct retaliation for asserting his rights under the ADA, the PFPO, and the FMLA.

63. The stark contrast between Defendant's treatment of Caucasian employees, as stated herein, and Plaintiff, who was terminated for legitimate disability-related absences supported by medical documentation and a pending Intermittent FMLA request, exposes the racial and disability-based animus driving Defendant's employment decisions.

64. Notably, Chapman was terminated by Defendant at approximately the same time as Plaintiff, further evidencing the pattern of racial discrimination perpetuated by Farley.

65. Chapman also reported directly to Farley and was subjected to the same discriminatory treatment as other Black employees under Farley's management.

66. Defendant discriminated against Plaintiff based on his race, religion and disability and retaliated against him for reporting the aforementioned discrimination and requesting reasonable accommodations in violation of Title VII, Section 1981 the ADA and the PFPO.

67. In addition, Defendant interfered with Plaintiff's rights under the FMLA and retaliated against him for requesting Intermittent FMLA leave in violation of the FMLA.

68. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – RACE DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

69. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

70. Plaintiff is a member of protected classes in that he is African American.

71. Plaintiff was qualified to perform the job for which he was hired.

72. Plaintiff suffered adverse job actions, including, but not limited to termination.

73. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

74. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

75. Defendants discriminated against Plaintiff on the basis of his protected class.

76. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

77. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

78. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II – DISCRIMINATION BASED ON RACE**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

79. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

80. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff

on the basis of his protected class (African American).

81. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – RACE DISCRIMINATION**
**SECTION 1981 OF THE CIVIL RIGHTS ACT**

82. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
83. Plaintiff is a member of protected classes in that she is African American.
84. Plaintiff was qualified to perform the job for which she was hired.
85. Plaintiff suffered adverse job actions, including, but not limited to termination.
86. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.
87. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.
88. Defendant intentionally discriminated against Plaintiff on the basis of her protected class.
89. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.
90. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.
91. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT IV – RELIGIOUS DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

92. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

93. Plaintiff is a member of protected classes in that he is Muslim.

94. Plaintiff was qualified to perform the job for which he was hired.

95. Plaintiff suffered adverse job actions, including, but not limited to termination.

96. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

97. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

98. Defendant discriminated against Plaintiff on the basis of his protected class.

99. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

100. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

101. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT V – DISCRIMINATION BASED ON RELIGION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

102. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

103. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (Muslim).

104. As a result of Defendants' unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VI – DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

105. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

106. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and their agents as being disabled.

107. Plaintiff was qualified to perform the job.

108. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

109. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

110. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

111. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.

112. The purported reason for Defendant's decision is pretextual.

113. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

114. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

115. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

116. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII – DISABILITY DISCRIMINATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

117. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

118. Plaintiff is a "qualified individual with a disability" as that term is defined under the PFPO because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and their agents as being disabled.

119. Plaintiff was qualified to perform the job.

120. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

121. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

122. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

123. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

124. The purported reason for Defendant's decision is pretextual.

125. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

126. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process

127. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VIII – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

128. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

129. Plaintiff engaged in activity protected by Title VII.

130. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

131. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

132. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT IX – RETALIATION**
**SECTION 1981 OF THE CIVIL RIGHTS ACT**

133. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

134. Plaintiff engaged in activity protected by Section 1981.

135. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

136. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

137. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT X – RETALIATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

138. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

139. Plaintiff engaged in activity protected by the ADA.

140. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

141. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

142. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT XI – RETALIATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

143. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

144. Plaintiff engaged in activity protected by the PFPO.

145. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

146. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT XII – INTERFERENCE**
**FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

147. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

148. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

149. At all times material, Defendant knew, or should have known, of Plaintiff's need for Intermittent FMLA leave to care for his own serious health condition.

150. Defendant acted in bad faith by interfering with Plaintiff's rights under the FMLA.

151. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's FMLA-related request for leave.

152. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

153. As a direct and proximate result of Defendant's unlawful interference with Plaintiff's rights under the FMLA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to lost wages, pain and suffering, mental anguish, humiliation, loss of fringe benefits, disruption of his personal life and loss of enjoyment of the ordinary pleasures of life.

154. Plaintiff demands judgment in his favor against Defendant for all available equitable relief including, but not limited to: unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

155. Plaintiff further demands judgment in his favor against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under § 2617(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the Family and Medical Leave Act of 1993.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

**COUNT XIII –RETALIATION**
**FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

156. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

157. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

158. At all times material, Defendant knew, or should have known, of Plaintiff's need for Intermittent FMLA Leave to care for his own serious medical condition.

159. Plaintiff gave Defendant sufficient information to allow it to understand that he needed leave for FMLA-qualifying reasons.

160. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke his federally protected rights under the FMLA.

161. As a result of Plaintiff's attempt to invoke his FMLA rights, by requesting and utilizing his FMLA rights, Defendant has retaliated against Plaintiff by terminating his employment.

162. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

163. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

164. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

165. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages

proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

166. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Wayne Patterson, requests that the Court grant him the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive damages;

(d) Liquidated damages;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for the negative tax consequences of a lump sum award in a single tax year;

(i) Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation

from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(j) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

**JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**
**KOLLER LAW, LLC**

Date: October 26, 2026

**By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*